Mr. O'Keefe? May it please the Court, my name is Jay O'Keefe, and I represent Correctional Officer William Crum, the defendant in the Civil Rights case. Qualified immunity protects government officials from liability for violations of constitutional rights that were not clearly established at the time of the challenge of conduct. That legal principle applies even if the prior law might seem questionable in hindsight, and it applies even if the result might appear unsympathetic. Here, viewing the facts in the light most favorable to the plaintiff, Officer Crum assaulted Demetrius Hill, a restrained inmate at a federal prison, but caused only minor injuries. In Hill's own words, bruising, dizziness, and a vicious, vicious headache. That presents the Court with a question of pure law, whether, under those facts, Officer Crum is entitled to qualified immunity, or more precisely, whether that conduct violates law that was clearly established in this circuit on November 1st, 2007, and it doesn't, because the law in place in this circuit at that time was Norman v. Taylor, the Court's en banc decision that's since been overruled. While it remained in effect, Norman held that, absent the most extraordinary circumstances, a plaintiff could not prevail on an 8th Amendment claim if his injuries were just de minimis. Would a reasonable officer, at the time of his conduct in this case, conclude that assaulting an inmate simply to inflict pain was constitutionally permissible, so long as it caused only de minimis injuries? I think that conclusion is inescapable from the cases in the Norman line. They applied the de minimis threshold. You heard my hypothetical, is simply to inflict pain. Simply to inflict pain, because a necessary element of an 8th Amendment claim under Norman was more than de minimis injury, and that was a bright line rule. So under your argument, the officer could assault the inmate for any reason, as long as he didn't leave a mark? As long as he didn't hurt him. As long as he didn't cause more than de minimis injury. That de minimis injury was one of the elements of a claim, and there are three cases... What about the Supreme Court's Whitley decision, which was existing at the time? They didn't address the quantity of injury, but talked about the nature of the assault, and I think the language they used was unnecessary and wanton infliction of pain, violated the 8th Amendment. That's right, Your Honor, and Whitley was the seminal decision in that line. Hudson, a later Supreme Court of the United States opinion, interpreted that, and then Norman, and those cases in this circuit, interpreted Hudson and Whitley. The Norman court had Whitley before it when it imposed the bright line rule that you need to suffer more than de minimis injury, and in fact, Hudson itself, which Norman was interpreting, relied heavily on Whitley and used that... Did Norman deal with a deliberate infliction of pain, just to inflict pain? Norman didn't, but other cases in the Norman line did, and it becomes clear from Taylor, which did, or addressed the situation where, even if there was a genuine issue of material fact on that point, failure to prove more than de minimis injury was disfollowing... I understand that. What I'm suggesting is that there may be... One is sort of a qualitative type of characteristic, and the other is quantitative, and in Norman versus Taylor, we didn't dispense with the notion of Whitley, that unnecessary and gratuitous infliction of pain was a violation of the Eighth Amendment. What we did is said, he can't, regardless of whether that's so, he can't pursue it because the injury was de minimis. Supreme Court reversed that, but neither of those cases touched the basic standard of what violates the Eighth Amendment. And maybe I can try and come at this from a different way. Qualified immunity protects all law enforcement officers who are reasonable. It protects everybody who's not plainly incompetent or willfully violating the law. Okay, so to lose his qualified immunity, Officer Crum doesn't just need to be wrong about the law, he needs to be plainly wrong about the law. He needs to come to a conclusion that's abjectly unreasonable, and there are cases in this circuit, not Norman itself, but the cases interpreting Norman. Let me ask you, you're arguing that some officer, let's take a hypothetical situation, that some officer gratuitously and maliciously goes and assaults a prisoner because he doesn't like him, and that officer would believe that he's doing a constitutional act because, as he says, I'm just causing de minimis injury. That's your belief as to what the officer would be doing? I think a reasonable officer could come to that conclusion, and some support from that is Judge Murnahan's dissent in Taylor, where Judge Murnahan was one of the judges who dissented in Norman, he dissented in Riley, and he dissented in Taylor as well, which is another case in that line. And he says, taking this line of cases, officers in our circuit are entitled to use excessive or unjustified force against inmates so long as they are careful or fortunate enough to leave only minor traces of his blows. He calls that one of the unacceptable results that you get when a finding of de minimis injury is considered to be positive. He's a dissenter, and he's protesting. The question is, what did Norman say, and what did it hold? That's exactly right, Your Honor, but he's a dissenter, and he's a circuit judge, and he's interpreting Norman, and if a circuit judge can come to the conclusion that Norman Well, that's not the law of the circuit. The circuit is the majority opinion. That's right, Your Honor, but this is a circuit judge reading the law, and he comes to this who came to exactly the same conclusion as Judge Murnahan in this case is plainly incompetent. Well, what about the fact that taking Judge Niemeyer's question one step further, how is it reasonable for an officer to conclude that he could inflict pain on an inmate merely for the sake of inflicting pain when that inmate is, as was not the case in Norman but is the case here, restrained, cooperative, and not even making a move to defend himself in any way? The answer to that is the same, and there's a difference between a constitutional violation and a state law tort like battery, and we're not talking about state law torts. We're simply talking about whether a reasonable correctional officer in 2007 could come to the conclusion that in order to state an Eighth Amendment claim in the Fourth Circuit, you need to show more than de minimis injury, and there's a mountain of case law to that effect. Again, we talked about the dissent in Taylor and whether or not that's the controlling law. That is a conclusion that a federal appellate judge came to about the controlling law, and he used to illustrate how unfair the law was at that time a situation where he asked the reader to imagine an inmate who, although beaten intensely in the stomach, back, chest, or groin, displays no greater outward signs of physical injury than that which the majority terms temporary swelling. That's his paradigm example of a claim that can't go forward under Norman, and that's exactly this case. It's perfectly reasonable for a correctional officer to come to the same conclusion under the law that Judge Murnahan did. It might be distasteful in hindsight, and it might make you question whether Norman, as interpreted by the lower courts in this circuit, and interpreted by even some of the judges in this circuit, was good public policy, but that doesn't make it an unreasonable conclusion. It was within the scope of interpretations of the governing case law that a government official could rely on and still be covered by qualified immunity. Applying Norman as to whether the injury was de minimis, is that something for the jury to decide? Applying Norman? Let's assume the characterization that Judge Murnahan concluded in his dissent is the controlling law, stated in that way. And it goes to the jury, and the jury says, in this case, the injury inflicted was not de minimis, and therefore an eighth amendment violation. Is that the role of the jury? The question is, if that's a factual question, if the immunity is going to determine on the degree of injury, and we can't tell whether it's de minimis or not, can that issue of fact be given to a jury? I think that issue of fact can be given to a jury in a hypothetical case. In this case, it wasn't. The jury instructions are at ECF 176 of the district court record, and it didn't ask the court to make any of those determinations. That could be a fact that goes to the jury. The question of qualified immunity is a pure question of law, especially the question of justice. Well, I understand. We've had a lot of immunity cases, but we also have that Supreme Court case that when the immunity turns on a question, Johnson or whatever the case was, turns on a question of fact, then we don't grant immunity at that time, and we let the fact finder make the determination. That's right, but the injuries alleged in this case are plainly de minimis under myriad cases in the Norman line. The bruises, swelling, and headache are, first of all, identical to the injuries in Wilkins that the district court in that case and this court both found to be de minimis. Not only that, but you have Taylor where the majority says, not Judge Murnahan's dissent anymore, but the majority says temporary swelling and irritation is precisely the type of injury that this court considers de minimis. There are just numerous cases. So you have to take the position that for our summary judgment purposes here, that the injuries pled and or elucidated up to the summary judgment determination were de minimis as a matter of law. That's correct, Your Honor. And just as a point of clarification, there was actually a trial, and we're here on an appeal of a post-trial motion for a qualified immunity. Oh, the trial was nullified. It was, it was, yeah. So if that happens, is the trial never occurred? That's right, but I just meant in terms of the context of the case. And it's de minimis injury as a matter of law, both under Taylor and then there are dozens of other cases from this court and the district courts in the circuit, published and unpublished. But in addition to Taylor, you have the district court opinion in Marshall v. Odom where you had headaches, abrasions, numbness and swelling knots all over the plaintiff's body being de minimis. You have unpublished cases telling you that multiple dog bites and broken fingers are de minimis. The injuries in this case... Judge Kaiser several times to grant immunity in this case. Where did he go wrong? I think it was Judge Turk, Your Honor. Turk, excuse me. He went wrong... That was our last case. It was. And Judge Kaiser was involved in a lot of the defendants. No, it was Judge Turk. It was. He went wrong in a couple places. First, he said, if I accept your rule, defendants, then any conduct, no matter how vile or reprehensible, and it's kind of like the line of hypotheticals we were getting into earlier, is going to be allowed under the Eighth Amendment, as long as it doesn't leave lasting injury. And that's wrong for two reasons. First, we don't have to justify the policy result. We just have to show that the law that we're talking about was in place in 2007, and it clearly was. Second, it kind of mischaracterizes our norm and rule, is that you need to meet the de minimis injury threshold unless your case involves conduct that's repugnant to the conscience of mankind, or a situation where the plaintiff's pain itself is so significant as to constitute more than de minimis injury in and of itself. So those take care of the situations that Judge Turk was worried about. The really vile, reprehensible conduct is going to be conduct repugnant to the conscience of mankind, and that's exempt from the de minimis injury threshold requirement. The district court also said that it's simply inconceivable that any reasonable correctional officer could not know that assault... Is that language from some case conscious of mankind, or is that our language? That is, it's certainly from Norman. I know it is, but I'm just wondering where we found it. It's either from Norman, or Norman took it from Hudson. I think it was from Hudson. But those avoid the nightmare scenario that the district court was worried about in that case. His other point was that no reasonable correctional officer could not know that this was unconstitutional, and our response to that is the one that we already discussed, that Judge Murnahan came to that conclusion, that there are myriad cases from the district courts, from this circuit, published and unpublished, that could certainly lead a reasonable correctional officer to that conclusion. Okay. Thank you. Thank you. Ms. Sokolofsky? Sokolofsky, Your Honor. Sokolofsky. On behalf of Plaintiff Demetrius Hill, if it may please the court, Your Honor, I'd like to make a point on several of the arguments, number one starting with the qualified immunity argument. The definition of the qualified immunity taken from this district in Iko v. Shreve is, a right is clearly established for qualified immunity purposes if the law gives an official warning that its conduct is unconstitutional. I would question whether Mr. Defendant Crum thought in his head that I can beat, maliciously beat a handcuffed inmate, and that that would be constitutional. Quite opposite during the trial of this matter. Well, except that if you accept, and I'm not suggesting we have to accept, but if you accept Judge Murnahan's characterization of what we were doing in Norman, he dissented, he said just that. He said basically what this opinion authorizes is the deliberate infliction, malicious infliction, gratuitous pain, so long as the injury is de minimis. And cabined the Eighth Amendment on the de case, if you can pinch somebody deliberately and with maliciousness, you say you're just a lousy guy, would that be an Eighth Amendment violation? And Norman v. Taylor would have said not so. And so the question is, he's imputed with that case, knowledge of that case, whether he knows about it or not. And does he get immunity based on that case, even though it was later reversed? I would argue no, for the reason that I believe that Norman v. Taylor is, it's specifically honed in on those set of facts that occurred in Norman. Quite frankly... What were the facts in Norman? The Norman v. Taylor case was an individual was in a booking area, he was smoking a cigarette that he shouldn't have been smoking. The officer came in and said, you know, you shouldn't be smoking that, and started swinging around some keys and hit him with the keys. Quite opposite. And quite frankly, most of the cases that follow the Norman line of reasoning... Is there any language in Norman that says it's limited to its facts? I'm sorry? Is there any language in Norman that says this case is limited to its facts? No, not specifically. However, the court does pay deference to Hudson and does pay deference to Whitley and does acknowledge the fact that there is... I'm sympathetic to your case a lot, but I also... You have to follow where these cases take us, and if Norman took into account Whitley and Hudson and said, this is the way you state a Whitley claim, an Eighth Amendment claim, it has to be more than de minimis injury. That is not necessarily what Norman hung his hat on. What happened with that case was the fact that the court looked at it from what was reasonable in the sense of trying to maintain that defendant, that inmate. And the court held that swinging a set of keys and hitting the thumb was reasonable enough to try to maintain... We applied Norman v. Taylor thereafter in various types of factual contexts where the injuries were not severe, de minimis, and said no Eighth Amendment violation based on that fact. That is correct, Your Honor, but what I believe distinguishes those cases is in the cases that were proffered by opposing counsel, those are cases where you have individuals that were being difficult, that were putting up a fight, that were doing something that was unexpectedly not part of what a prisoner guard expected to happen. Quite opposite in this case, and there was no finding otherwise, and everybody agreed Demetrius Hill was in handcuffs and cooperative. So he was not putting up any fight whatsoever. The courts, every case law that relied on Norman... Well, I'm assuming he was being punished for purposes of your case, that the guard was being punished for whatever came before, basically, opening up... He believed he broke a sprinkler. A sprinkler, or flooded the cell. And he was punishing him and inflicted, let's assume hypothetically, de minimis injury. The question is, if he did it deliberately punishing him, but only inflicting de minimis injury at the time, would that have been unconstitutional? Yes. I believe that it would be based on Whitley, based on Hudson, and... Well, the problem I think you have, counsel, that you've got to address in order to prevail is that in Norman, no matter how counterintuitive it may look sitting here today, the court there went through a fairly lengthy analysis of Hudson and Whitley and reached its conclusion as to what those cases meant in Norman. It said very specifically, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis. I think you've got to find a way to distinguish Norman as a matter of principle more than whether the facts are different, because every case is going to be different facts. I think in Norman, the court did also state, and it did also recognize, that the Supreme Court had stated that unnecessary and wanton infliction of pain is not acceptable. And they addressed Hudson and stated that there was an objective component to ask whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. So it addressed Whitley and Hudson. In that case, it felt that the officer was in his right because the inmate was being disruptive and whatnot. But I believe that that's distinguishable. I believe that you have to take in looking at the way that Norman and looking at the cases that follow Norman, the only fact pattern that comes into play that may even be similar to this is the Wilkins v. Gaddy case, which went up to the Supreme Court in 2010, where the United States Supreme Court said, no, you can't do that. How does that help you, though, for an act that occurred before that time? Because you have to say, what was the clearly established law to a reasonable officer at the time of this event in 2007? And so a correctional officer went to a continuing education thing and the presenter of that would have gone through Norman and all these other cases that you had a correctional officer or a police officer who struck or otherwise injured an inmate, someone who was in custody. And as long as there wasn't more than de minimis injury, this court had said, you can't make an eighth amendment claim. That's what they would have been told. But you're also making the assumption that he went to these classes and was told about Norman. That doesn't matter. That's for qualified immunity purposes, that's imputed. Which, well, during the trial, Officer Crum specifically recalled The trial was, a new trial was given in this case. You didn't file a cross appeal on it. That trial never happened for our purposes. Okay, well, the other question would be Even so, he's imputed with the law. We don't determine whether he actually knew it or not or whether he was taught it or taught one thing or another. Even if he was taught something wrong in his courses, he's imputed with the law as we look at the law at that point in time. But the idea is that, then the argument would be that he's imputed with the idea that I could beat a handcuffed inmate and as long as I don't leave any injuries, it's okay. Not leave, a de minimis injury. And it's not an appearance thing. It's, I suppose, there could be injuries of a nature that don't appear. I mean, you can even break a bone and you can't see it. But, I think, I'm trying to figure out, the intuition goes your way, the loss gives you trouble. Well, I think that you also have the issue of what's unconscious to mankind and, or the wanton conduct is found implicit in the Haitham Amendment. What's malicious? What's sadistic? For the very purpose of causing harm. As stated in Whitley, as stated in Hudson, you still have that issue of the state of mind. In Norman versus Taylor, the court addressed the fact that this individual did not have that state of mind. And they do address that and they do address it even in their footnotes indicating that, you know, they're recognizing that there are circumstances where an application of force could result in little, or perhaps no injury, but nonetheless would result in an impermissible infliction of pain. So the Norman court is still acknowledging that Hudson does apply. The Norman court is still acknowledging that there has to be that element of that wanton and willful and sadistic and malicious intent to harm. Where you would cut hairs on that is, you know, what is that wanton and willful conduct? Opposing counsel's brief indicates that. Well, you know, West Virginia law argued 10 officers that may constitute wanton and willful conduct. But as you are aware, as this court is aware, every case is different. And every fact pattern is different. And the cases that apply Norman, in all of those cases, there is never a circumstance where there is an argument that there was not causing a problem or anything of that nature. The Fourth Circuit carved out that exception. I believe the Fourth Circuit carved out that exception in cases where by accident somebody got their hand slammed as, you know, prisoners were being taken care of from a fight. There was a case where an inmate got shot as a result of a riot that was going on. And we're not saying that those cases, that Norman wouldn't apply in those cases to say, well, I'm just going to shoot you for the sake of shooting you. But to argue that Norman would usurp Hudson and Whitley, I don't see that in that case law. I do not see that in the line of cases. And I do not see that in Norman. I believe that Norman carved out a specific exception for instances where maybe there is that gray area. Do you think Norman would be read to say any Eighth Amendment violation is not actionable if only de minimis injury results? No. And I believe that, and they've indicated in their footnotes to say that they base this provided that the use of force is not of a sort repugnant to the conscience of mankind. And I think the standard for that has been pretty high. We're talking about waterboarding or some other form of torture usually, I think, in the cases that have applied that. I will give you that, Your Honor, yes. But I guess that question would become where does that, you know, where does the repugnant start and where does that stop? Let's just assume that this conduct didn't hit the exception there, that it's repugnant to the conscience of mankind. Would Norman then be read, without that exception, be read to protect every Eighth Amendment violation if only de minimis? No, I do not believe that either. I think Norman falls somewhere in the middle. I think the court specifically stated minimal force was applied in a good faith effort to restore discipline to quiet Norman down and extinguish his cigarette. The court in Norman was essentially saying this individual was being disruptive. What occurred as a result of that disruption was minimal force. It was not excessive force. And it was force that was okay to that court and okay to the Fourth Circuit at that time. And quite frankly, a lot of those cases that followed Norman followed in those same lines, as I indicated. But when you start to get into a fact pattern where an individual is not being disruptive and there is no necessary even minimal force, then that question, I think, falls completely outside of Norman and it falls into a straight up Eighth Amendment violation where you start applying Hudson, you start applying Whitley. And quite frankly, if there was this analysis where you could assault an individual as long as you didn't leave any bruising, then wouldn't every prison have handbooks of saying here's how you beat somebody up without leaving any injuries on them? And they don't have that for a reason. Everybody is aware of an Eighth Amendment, of the Eighth Amendment. Everyone is aware of what cruel and unusual punishment is. And where you step into that gray area is when somebody is being disruptive and you're using force. Is that excessive force? Is that minimal force? Here we have a case where the individual was not even being disruptive. So that, I believe, takes it completely out of the context of Norman. I would also like to point out to the court that Williams v. Kelton was determined and I know that opposing counsel was also on that case and that was similar, not similar in the fact pattern so much, but similar in the de minimis injury argument and that came down recently just by this district. And that came down March 8, 2013. By the Fourth argued that they found it unpersuasive that the qualified immunity, that everything's changed between Norman and Wilkins. And that Wilkins, well, they did not get into that whole argument, but they did find that that was an unpersuasive argument on behalf of And just to make it clearer, in that fact pattern, as stated already, there were handcuffs, there was no resistance. The issue of whether there was de minimis injury or not, obviously he didn't have any broken bones, he didn't have anything of that nature. The issue of how that was, how medical records were reported and what actually occurred, I would point out to the court that this is a dark African American male, so bruising or anything of that nature, there's a video, but you only see the inmate a minor part of the time as there was individuals in riot gear. And the nurse that checked out Mr. Hill to see if he was injured was also in riot gear and did it for a very short period of time without any communication between the two of those individuals. So that would be taken into consideration. What's your best evidence that there's more than de minimis injury? In the video, at a certain point, and it's stated in my brief, I believe that there's a swelling of the eye and also that what happened was after, and to be clear, the sprinkler, it was admitted and everybody acknowledged that my client did not break the sprinkler, it was the other inmate. Obviously at that time, Mr. Hill had already made a complaint about Officer Crum on a previous recreational issue. And when they were taken out of the cells, they were put into whatever other holding was necessary at that time, the straps and things of that nature. So there was no opportunity for my client to go back to a cell and look in a mirror or feel around and see what's going on with his body. He was taken immediately from that and put into restraints for, I believe, 48 hours or somewhere around there, but I'm not sure. But there was no opportunity for him to go back into a cell and assess what was going on with his body. What we have is a videotape. That videotape has been submitted to the court. But that see the inmate, but you just see him in a short period of time. It's hard to make, I couldn't tell too much from it. Yeah, you can't really, you know, there's, quite frankly, I can't even tell when the nurse checked him out. It's been cited to where that time would be. But if she checked him out, she had to have been in riot gear and there couldn't have been any communication between the two. So anything that goes towards a medical record of that state, I would argue, is not as clear as it would be. Is your best evidence, Mr. Hill's, opinion as to how he was injured? I mean, is there anything else in the record that shows any injury other than what he says? No, there is no record of any injury. There's no record of any of that. The records actually indicate he was completely fine. So it's based on what Mr. Hill's testimony is. Thank you. Thank you. Mr. O'Keefe. Thank you, Your Honor. It seems like the real nub of the case is whether a defendant who assaults an inmate with malicious and sadistic intent, but only causes de minimis harm, violates the Eighth Amendment. And I think the answer has to be that he doesn't, because we have two cases where this court has looked at malicious, sadistic assaults, unprovoked, on an inmate who's not bothering anybody, and said that that doesn't violate the Eighth Amendment. One of those is Hines v. Young. That's where an officer maliciously and without provocation slammed an inmate's hand in a mail slot and broke his fingers. The district court found that that was de minimis injury. The inmate hadn't stated a claim. This court affirmed that's an unpublished decision, but it was out there at the time of the alleged violation in this case. And the second, of course, is Wilkins v. Gaddy, which I think is our best case. That's where a correctional officer assaulted an inmate maliciously and sadistically in essentially the same fashion alleged here. The inmate only asserted injuries that are de minimis under the case law. The district court threw it out, and this court affirmed under Norman. And so those two cases show that a reasonable correctional officer could come to that conclusion, citing those two cases, citing the Murnahan dissent in Taylor. So I don't think it's accurate to say that every single case in the Norman line involves a good faith effort to restore prison discipline, because it doesn't. We can point to cases that are malicious, sadistic, and without provocation, but there's still a de minimis injury threshold. Second, as to the Lawrence v. Colton case, there's a few reasons the court shouldn't follow that. First, it's an unpublished per curiam opinion, so it has no binding authority. It's only as strong as the persuasive force of its reasoning, and it really doesn't address our argument at all. In fact, you could say it mischaracterizes our argument in saying that we're exonerated by an intervening change in the case law. And that's not what we're arguing at all. We're saying that the old case law was pretty clear, and it said you could do this. And we're not saying an intervening change exonerates us in any way. Second, there's a good argument to be made that that case is factually distinguishable. The injury there included a laceration to the head that required six staples to close. It's arguable whether or not that's de minimis, but it's certainly got a stronger case for meeting the de minimis injury threshold than the injuries alleged here. And third, frankly, we think it's wrong, and Officer Colton and I have it on pretty good authorities considering whether to file a petition for rehearing. So that's why we don't think that case is very useful here. And finally, as to the videotape and the best evidence of injury, if the best evidence of injury is what Hill said on the stand, which is he was bruised, he was dizzy, and he had a headache, and the shot that appears to show him with a swollen eye, well, we'll look at the facts and the light most favorable to him and say that his eye is swollen. It's crystal clear under the case law that temporary swelling is not more than de minimis injury. The tailored court said that in its majority opinion. So that also, there is the nurse, she's in riot gear, but she does examine him at about minute 43, and then she turns to the camera and reports that his vital signs are within normal limits and whatever. So I agree, you can't see much. She examines just his restraints. She focuses on his restraints. She says that, you know, if she'd noticed any injury, she would have noted it in her report. But she's there for a minute, maybe two minutes. It's not a full physical, but she looks at him. So for those reasons, Your Honors, we'd ask the court to reverse the district court's judgment, find that Officer Crum's entitled to qualify the hearing and dismiss the claim. Thank you. Thank you. We'll adjourn court sine die and then come down and greet counsel. This honorable court stays adjourned sine die. God save the United States and this honorable court.
judges: Paul V. Niemeyer, G. Steven Agee, Stephanie D. Thacker